IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIM McKEOWN, | ) | |
| | ) | |
| Plaintiff/Counter-defendant, | ) | No. 16 C 748 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| SUN LIFE ASSURANCE COMPANY OF CANADA, | ) ) | |
| | ) | |
| Defendant/Counter-plaintiff. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kim McKeown seeks review of Defendant Sun Life Assurance Company of Canada's ("Sun Life") denial of long-term disability benefits after remand, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Sun Life has filed a counterclaim for common law fraud, alleging that McKeown made fraudulent misrepresentations and fraudulently concealed information while pursuing her claim for disability benefits. McKeown has moved to dismiss the counterclaim. For the reasons provided herein, the motion is granted in part and denied in part.

I. **Factual Background**[1]

McKeown began working for the Society of Actuaries as a Public Relations Manager on January 26, 2005. Am. Compl. ¶ 13, ECF No. 94. As an employee,

---

[1] The following factual allegations must be accepted as true for purposes of the motion to dismiss. *See Heredia v. Capital Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019).

McKeown had long-term disability insurance benefits and life insurance benefits under the Society of Actuaries Welfare Benefits Plan ("the Plan"). *Id.* ¶ 7. Sun Life insures and underwrites the Plan and also determines eligibility for benefits under the Plan. *Id.* ¶ 8.

McKeown suffered from migraine-associated vertigo for over a decade and took short-term disability leaves for her condition in 2005, 2010, and 2011. *Id.* ¶ 15. In 2010, she slipped and fell on some ice and suffered a concussion. *Id.* ¶ 17. Her vertigo intensified from February through June of 2013, causing so much disorientation that McKeown was forced to use a walker. *Id.* ¶ 16. She stopped working on July 3, 2013, primarily due to her migraine-associated vertigo. *Id.* ¶ 13.

McKeown filed a claim for long-term disability benefits stating she was disabled due to migraine-associated vertigo and post-concussive syndrome. *Id.* ¶¶ 13–19; *see also* Pl./Counter-Def.'s Reply Ex. 5, 11/15/16 Appeal Decision at 4, ECF No. 129-1. As part of the claims process, she authorized Sun Life to access her mental health records. Am. Compl. ¶ 22.

Sun Life denied McKeown's claim on March 17, 2014, and terminated her life insurance coverage as well. *Id.* ¶ 20. Sun Life explained that "based on the medical documentation in your file we find that there is no clinical support for a functionally impairing psychological or physical condition that would preclude you from performing your current occupation as a Public Relations Manager." *Id.*

McKeown requested a review of the adverse benefit determination on August 26, 2014. *Id.* ¶ 23. On January 9, 2015, Sun Life upheld its decision to deny

McKeown's claim and found she had no impairment. *Id.* ¶ 24. Because Sun Life's denial letter merely disclaimed any impairment without providing its reasoning, McKeown was not aware that she was required to show that her conditions were not psychologically induced. *Id.* ¶ 23.

McKeown first filed her ERISA claim on January 19, 2016. *Id.* ¶ 25. Sun Life moved for judgment on the pleadings and argued that McKeown had not complied with its requests for proof of her claim prior to bringing suit. *Id.* ¶ 26. This Court denied the motion. *Id.* ¶ 27. After conducting some discovery, the parties agreed to remand the case for further consideration of McKeown's claim based upon the produced information. *Id.* ¶¶ 28–29.

By that time, the Social Security Administration ("SSA") had determined that McKeown was totally disabled by virtue of her vertigo and that she was unable to perform the minimal lifting and carrying activities of sedentary work. *Id.*

On July 11, 2017, Sun Life reversed its previous determination that McKeown did not suffer from an impairment. *Id.* ¶ 31. That said, Sun Life concluded that McKeown's impairments comprised of depression and anxiety, as well as a somatoform disorder—which are all psychological conditions. *Id.* ¶ 32. As a result, Sun Life determined that McKeown's benefits were capped at twenty-four months, pursuant to a policy limitation for psychological conditions. *Id.* ¶¶ 31–32.

McKeown filed a motion with the Court to reopen this case in order to review Sun Life's denial of benefits beyond the twenty-four-month period, and the Court granted the motion in February 2020. *See* 2/24/20 Order, ECF No. 93. Sun Life filed

3

its answer, and, for the first time, asserted a counterclaim for fraudulent misrepresentation and fraudulent concealment.[2] *See* Def./Counter-Pl.'s Answer & Counterclaim, ECF No. 107.

As part of its counterclaim, Sun Life alleges that, during its claim-review process, McKeown made false statements and concealed factual information regarding her psychological impairments in an attempt to avoid the twenty-four-month benefit cap. Def./Counter-Pl.'s Answer Am. Compl. & 2d Am. Counterclaim ("2d Am. Counterclaim") ¶ 84, ECF No. 110. Sun Life claims that it repeatedly requested McKeown's SSA file, which included raw data from neuropsychological testing. *Id.* ¶¶ 17–19, 23–27. According to Sun Life, although McKeown and her counsel had access to the SSA file, they falsely stated on December 2 and 4, 2014, that "we are unable to further assist Sun Life in obtaining the additional Social Security documentation" and that the documentation was "outside of our control to produce." *Id.* ¶¶ 26, 30, 31. Through these allegedly fraudulent misrepresentations, Sun Life asserts, McKeown fraudulently concealed the test results that demonstrated that her impairment was psychological. *Id.* ¶ 55. Sun Life also claims that it relied on these false statements and omissions for its March 17, 2014, denial. *Id.* ¶ 13.

---

[2] The Court notes that Sun Life has alleged it was aware of McKeown's psychological impairment when it issued its decision on remand on July 11, 2017. 2d Am. Counterclaim ¶ 72. Yet, Sun Life did not file its counterclaim until June 23, 2020. As such, it would appear that Illinois's two-year statute of limitations period for tort claims, *see* Ill. Comp. Stat. 5/13-202, had already expired when Sun Life first raised its fraud claim. But because the statute of limitations is an affirmative defense, and McKeown has not yet filed her answer, the affirmative defense has not yet come into play. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004) ("All we have to go on is the complaint, and because the period of limitations is an affirmative defense it is rarely a good reason to dismiss[.]").

4

Furthermore, at least according to Sun Life, had McKeown provided the requested documentation in the first place, Sun Life could have approved her claim in 2014 based on her psychological impairment and avoided protracted litigation. *Id.* ¶ 85. McKeown has moved to dismiss Sun Life's counterclaim. *See* Pl./Counter-Def.'s Mot. Dismiss 2d Am. Countercl., ECF No. 115.

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a motion to dismiss, the Court asks "whether the well-pleaded factual allegations viewed in favor of the nonmoving party state a facially plausible claim for relief." *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

In addition, Rule 9(b)'s heightened pleading standard requires a plaintiff to allege claims of fraud with "particularity." Fed. R. Civ. P. 9(b); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). That means a plaintiff must provide "precision and some measure of substantiation" with regard to each fraud allegation. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*

5

("*Acacia*"), 836 F.3d 770, 776 (7th Cir. 2016) (internal quotation marks omitted). "Put more simply, a plaintiff must plead the 'who, what, when, where, and how' of the alleged fraud." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 2674 (2020) (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019)). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

### III. Analysis

McKeown raises two grounds in support of dismissal. She first argues that Sun Life's common-law fraud counterclaim is preempted by ERISA. Alternatively, she contends that Sun Life has failed to plead the reliance and injury elements necessary for a fraud claim under Illinois law, because the only injury it alleges is payment of attorneys' fees and costs.

### A. ERISA Preemption

McKeown argues that Sun Life's counterclaim is preempted by ERISA. As she sees it, Sun Life's counterclaim hinges on the proper quantum of documentation necessary to establish "Proof of Claim" under the long-term disability policy, and, because that issue relates to the long-term disability employee benefit plan, the claim is expressly preempted. Pl./Counter-Def.'s Mem. Law Supp. Mot. Dismiss 2d Am. Countercl. at 7 (quoting 2d Am. Counterclaim ¶¶ 9, 47), ECF No. 116.

With certain exceptions, ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter *relate to any employee benefit plan*." 29 U.S.C. § 1144(a) (emphasis added). As the Seventh Circuit has noted, the italicized

phrase "is not, however, self-defining, and the Supreme Court '[has] been at least mildly schizophrenic in mapping its contours.'" *Trs. of AFTRA Health Fund v. Biondi* ("*AFTRA*"), 303 F.3d 765, 773 (7th Cir. 2002) (quoting *Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co.*, 215 F.3d 136, 139 (1st Cir. 2000)).

For its part, Sun Life relies on *AFTRA*, 303 F.3d 765. In that case, the trustees of an employee benefit fund sued a plan participant for fraudulent misrepresentation and fraudulent concealment. *Id.* at 770–71. The plan participant, as part of his divorce settlement, was required to provide COBRA health insurance for his ex-wife, but, instead, "he simply left his union benefits in place and treated her as a spouse." *Id.* at 770 (emphasis removed). After a bench trial, the plan participant argued that the fraud claims were preempted by ERISA. The trial court disagreed and found that the participant had fraudulently represented to the fund that he and his wife were still married and fraudulently concealed the fact that they had been divorced. *Id.* at 771.[3]

The plan participant appealed, arguing in part that ERISA preempted the trustee's claims. *Id.* at 773. The Seventh Circuit disagreed, stating that "[r]egardless of any contractual duties [the participant] owed the Fund under the terms of the Plan, he had a separate and distinct duty under Illinois tort law not to misrepresent his marital status" and "to not conceal his divorce from the Fund." *Id.* at 777, 781–82.

---

[3] The trustees were awarded damages calculated as the difference between the premium paid by the employer and the premium that would have been owed for COBRA coverage, as well as the amounts that the fund had paid out for the ex-wife's medical expenses. *Id.* at 772.

7

Furthermore, the court held that "ERISA's civil enforcement provisions . . . neither address nor provide a remedy for situations where a[n] employee benefit trust fund has been defrauded by a non-fiduciary." *Id.* at 782 (citing 29 U.S.C. §§ 1109, 1132(a)(1)–(9), 1132(d)(2)); *see also Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996) (concluding that § 1132(a) only allows suits for legal relief *against* ERISA plans, administrators, or fiduciaries). The court continued:

> Because ERISA does not provide any mechanism for plan administrators or fiduciaries to recoup monies defrauded from employee benefit trust funds by plan participants, garden-variety state-law tort claims must, as a general matter, remain undisturbed by ERISA; otherwise, there would be no way for a trust fund to recover damages caused by a plan participant's fraudulent conduct.

*AFTRA*, 303 F.3d at 782.

Similarly, here, Sun Life alleges that McKeown fraudulently misrepresented that she did not have access to her SSA file containing her psychological test results, thereby fraudulently concealing her psychological impairment. Taking these allegations to be true (as the Court must at this stage), *AFTRA* teaches that, regardless of McKeown's contractual duties under the plan, she owed the Fund a separate and distinct duty under Illinois tort law not to misrepresent that she had access to test results that revealed her psychological impairment.

McKeown attempts to distinguish *AFTRA* by arguing that ERISA does, indeed, provide a mechanism for the trustees to recoup their attorneys' fees and costs by virtue of 29 U.S.C. § 1132(g)(2)(D). That statutory provision, however, only applies to actions under 29 U.S.C. § 1132, which provides that a fiduciary may bring a claim

8

for injunctive relief, rather than compensatory damages. *See Jass*, 88 F.3d at 1490. Accordingly, because McKeown's preemption argument is identical to the one rejected in *AFTRA*, the Court concludes that Sun Life's fraud claim is not preempted by ERISA. McKeown's motion to dismiss is denied on this ground.

**B.     Fraudulent Misrepresentation and Fraudulent Concealment**

Next, McKeown asserts that Sun Life has failed to plead certain elements of fraudulent misrepresentation and fraudulent concealment. These claims share many of the same elements. *Compare Bd. of Educ. of City of Chi. v. A, C & S, Inc.* ("*A, C & S Inc.*"), 546 N.E.2d 580, 591 (Ill. 1989), *with Schrager v. N. Cmty. Bank*, 767 N.E.2d 376, 384 (Ill. App. Ct. 2002).

To plead a fraudulent misrepresentation claim under Illinois law, a plaintiff must allege:

> (1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to the other party resulting from such reliance.

*A, C & S, Inc.*, 546 N.E.2d at 591; *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012).

To state a claim for fraudulent concealment under Illinois law, a plaintiff must plead:

> (1) the concealment of a material fact; (2) the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a

9

> representation that the fact did not exist; (4) the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury.

*Schrager*, 767 N.E.2d at 384 (internal quotation marks and citation omitted); *see also Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996).

According to McKeown, Sun Life has failed to allege reliance and damages. As to the first point, she asserts that, because Sun Life alleges it was aware of McKeown's psychological disability before the remand of this action, it cannot complain that it was deceived after remand. 2d Am. Counterclaim ¶ 53. In response, Sun Life clarifies that it is not "claiming that the damages it incurred are the administrative costs incurred in the claim review in 2017," *see* Def./Counter-Pl.'s Resp. Br. at 13–14, ECF No. 126, but the expenses it incurred in 2014 and 2015 in its initial review of McKeown's claim, including the costs of retaining a neuropsychologist and paying employees to review her incomplete psychological records. 2d Am. Counterclaim ¶¶ 38–40. Based upon this clarification, Sun Life has sufficiently alleged reliance.

Turning to damages, McKeown argues that Sun Life's allegation of damages in the form attorneys' fees and costs it incurred to defend this action prior to remand does not satisfy the injury element to support a fraud claim under Illinois law. She is correct.

"Illinois generally adheres to the American Rule that each party bears its own litigation costs." *Webb v. Fin. Indus. Regulatory Auth., Inc.*, 889 F.3d 853, 857 (7th

10

Cir. 2018). "Its common law does not authorize a prevailing party to recover attorneys' fees from an opponent." *Id.* (citing *Ritter v. Ritter*, 46 N.E.2d 41, 43 (Ill. 1943)). Accordingly, "[a]ny right to recovery must derive from contract or statute." *Id.* (citing *Ritter*, 46 N.E.2d at 43); *see also, e.g.*, *Chow v. Aegis Mortg. Corp.*, 185 F. Supp. 2d 914, 917–18 (N.D. Ill. 2002) ("Attorney's fees and costs do not appear to be even available to a prevailing party under common law fraud, as opposed to the (inapplicable) Illinois Consumer Fraud Act[.]").[4]

Sun Life proposes a new exception to the American Rule that would allow costs and attorneys' fees as damages when they are incurred *prior* to a plaintiff's discovery of fraud in the same litigation. But it cites no authority to support its position. And the cases upon it relies provide little help.

In *Black v. Iovino*, 580 N.E.2d 139, 149–51 (Ill. App. Ct. 1991), the court had no occasion to determine whether, under the American Rule, attorneys' fees and costs in the same case qualified as damages for a fraud claim. The holding in *Father & Sons v. Taylor*, 703 N.E.2d 532, 537 (Ill. App. Ct. 1998), also is distinguishable, because it analyzed the availability of attorneys' fees and costs under the Illinois Consumer Fraud Act, which expressly permits such recovery. *Id.* Thus, the Court is left with binding authority that Illinois common law does not allow a party to recover

---

[4] Illinois does recognize a "third party litigation exception to the American Rule." *Webb*, 889 F.3d at 857 (citing *Ritter*, 46 N.E.2d at 44) (internal quotation marks omitted). "[W]here the wrongful acts of a defendant involve the plaintiff in litigation with third parties[,] . . . the plaintiff can then recover damages against such wrongdoer, measured by the reasonable expenses of such litigation, including attorney fees." *Ritter*, 46 N.E.2d at 44. But that exception is not applicable here.

attorneys' fees and costs incurred in the same action as damages from an opponent. *See Webb*, 889 F.3d at 857.

Accordingly, McKeown's motion to dismiss the fraudulent misrepresentation and fraudulent concealment counterclaim on this ground is granted.

## IV. Conclusion

For the above-stated reasons, the Court grants in part and denies in part Plaintiff McKeown's motion to dismiss Sun Life's fraudulent misrepresentation and fraudulent concealment counterclaims. Based on Sun Life's clarification in response to the motion to dismiss, it may pursue these claims to the extent they are based upon the expenses incurred by Sun Life to review McKeown's psychological history prior to remand. Sun Life's counterclaims are dismissed to the extent that it asserts damages in the form of claims-processing expenses after remand. Furthermore, the counterclaims are dismissed to the extent that they seek damages in the form of any attorneys' fees and costs incurred in this litigation.

Date: 3/10/21 /s/ John Z. Lee